RENE L. VALLADARES
Federal Public Defender
Nevada Bar No. 11479
JASON F. CARR
Assistant Federal Public Defender
Nevada Bar No. 06587
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax

Counsel for **LOPEZ**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | 2:04-cr-0375-RLH-GWF |
|---|---|
| Plaintiff, | **UNOPPOSED MOTION TO STAY FURTHER RE-SENTENCING PROCEEDINGS PURSUANT TO 18 U.S.C. § 3582(c)(2) TO ALLOW DEFENDANT TIME TO IMPROVE HIS CUSTODY RECORD** |
| vs. | |
| CARLOS JAVIER LOPEZ, | |
| Defendant. | |

COMES NOW The defendant, Carlos Javier Lopez, by and through his counsel of record, Jason F. Carr, Assistant Federal Public Defender, hereby moves this Court to stay further proceedings to reduce the defendant's sentence pursuant to 18 U.S.C. § 3582(c)(2).

This case comes to the Court after the United States Court of Appeals for the Ninth Circuit found that Lopez was legally eligible for a sentencing reduction under the terms of 18 U.S.C. § 3582(c), U.S. Sentencing Guideline Manual § 1B1.10, and Amendment 750 to the United States Sentencing Guidelines which made a reduction in the base offense level for crack-cocaine offenses retroactive as of November 1, 2011. The Ninth Circuit determination settles only one of the applicable two part test. Law of the case dictates that Lopez is eligible for a two level reduction of his sentence, but this Court may, in its discretion, decline to grant that reduction based on its evaluation of the risk to the public engendered by Lopez's early release.

///

1

Post Ninth Circuit remand, the Office of Probation acquired, and allowed counsel for Lopez and the government to examine, Lopez's federal Bureau of Prisons (BOP) Inmate Skills Development Plan and Progress Report, dated September 9, 2013. Lopez's prison discipline record is not favorable and would arguably support a determination by this Court that Lopez does not warrant a sentence reduction. The government, in a reasonable and thoughtful concession, has determined that, while it would oppose further sentencing reduction if Lopez demands to press forward at this time, if Lopez agrees to a year delay in adjudication of the sentence reduction motion, the government will review the matter after the passage of that time to determine if Lopez's reformed prison conduct then warrants a joint recommendation for reduction.

Counsel for Lopez has had numerous telephonic conferences with Lopez on the government proposal. Lopez agrees the best course of action is to delay these proceedings to allow Lopez the time to reform his prison record.

Under the totality of the circumstances, and in light of the government's negotiated proposal which Lopez accepts, Lopez hereby requests this Court delay further proceedings in this matter and set the case for a status check to review Lopez's prison progress in approximately one year's time.

DATED this 25th day of November, 2013.

RENE L. VALLADARES
Federal Public Defender

*/s/ Jason F. Carr*
_____
JASON F. CARR,
Assistant Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

**A.  Lopez is Currently Incarcerated Based on his Jury Convictions for Three Firearm Counts, One Immigration Count, and the Crack Cocaine Count at Issue in this Motion.**

On September 15, 2004, the United States Attorney for the District of Nevada sought and acquired a five count criminal indictment charging Carlos Javier Lopez, with:

- Count One - Convicted Felon in Possession of a Firearm, a violation of 18 U.S.C. § 922(g)(1);
- Count Two - Illegal Alien in Possession of a Firearm, a violation of 18 U.S.C. § 922(g)(5)(a);
- Count Three - Possession of a Firearm During a Drug Trafficking Crime, a violation of 18 U.S.C. § 924(c)(1);
- Count Four - Possession of a Controlled Substance with Intent to Distribute, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); and
- Count Five - Illegal Reentry of Removed Alien (Aggravated Felony), a violation of 18 U.S.C. § 1326.

(*See* Trial Court Clerk's Record (CR) 1.)

Lopez proceeded to a jury trial where the jury convicted him of all five counts. (*See* CR 84 (verdict).)

On January 9, 2005, this Court entered a written judgment sentencing Lopez to 208-months' total imprisonment. The sentence per count breaks down as follows. The statutory maximum sentence of 120-months on the two firearm possession counts, Counts One and Two. A concurrent 124-month sentence on Count Five, the immigration violation. Another 124-month concurrent sentence on the crack cocaine conviction, Count Four. Then there is a statutorily mandated consecutive eighty-four month sentence for the possession of a firearm during a drug trafficking offense count, Count Three. (*See* CR 95; ER 9-17 (written judgment).)

The instant litigation concentrates on the Sentencing Guideline calculations regarding the 124-month concurrent sentences imposed for Counts One, Two, Four, and Five. The eighty-four-month consecutive sentence for Count Three, the 924(c) count, is not at issue and must be imposed to run consecutive to whatever sentence this Court imposes on the underlying counts.

The crux of the matter is that the retroactive crack cocaine amendments impact the Sentencing Guideline calculations for Count IV, the crack cocaine count. When the offense level for that count is revised downward, it impacts the entire grouping framework and calculus. The final

answer is that it reduces the adjusted base offense level by two levels. With Lopez's uncontested criminal history category of IV, the revised Sentencing Guideline range drops from the originally calculated 110 to 137 month range to 92-115 months. This Court originally imposed a sentence of 124 months, about the mid-range of the 110 to 137 month range. An equivalent sentence within the revised range would be approximately 103 months.

**B.     The Original Sentencing Guideline Calculations**

After Lopez's jury convictions, the Office of Probation prepared a Presentence Investigation Report (PSR). The Sentencing Guideline calculations are based on both the crack cocaine United States Sentencing Guideline and the Guideline grouping rules found in sections 3D1.1-3D1.4.

The Sentencing Guideline grouping rules required the counts to be placed together in sentencing groups based on the offense conduct and the nature of the offenses and victims. Probation determined that the two firearm possession counts, Counts One and Two, should be grouped with the possession of crack cocaine with intent to distribute count, Count Three. (*See* Presentence Investigation Report (PSR) ¶ 22.) This became Group One.

Group Two consisted only of Count Five, the illegal reentry count. (*See* PSR ¶¶ 28-34.)

Under the Sentencing Guidelines grouping rules, the group with the highest offense level becomes the lead group. *See* U.S. Sentencing Guideline Manual § 3D1.3(a) (2012). Probation determined that within Group One, the crack cocaine base offense level trumped the possession of firearm base offense level calculations. (*See* PSR ¶ 23.) In calculating the applicable base offense level for the crack cocaine count, the Report determined Lopez possessed 13.5 grams which, at the time of Lopez's sentencing, translated into a twenty-six base offense level. (*Id.*) *See also* U.S. Sentencing Guideline Manual § 2D1.1(c)(7) (2004) (applying a base offense level of twenty-six for offenses involving between five and twenty grams of crack cocaine).[1]

Because Probation determined the crack cocaine offense conduct trumped the firearm possession calculations, it did not calculate the base offense levels for those counts. This need not

---

[1] The Office of Probation utilized the 2004 version of the Sentencing Guidelines to calculate Lopez's sentence. *See generally* U.S. Sentencing Guideline Manaul § 1B1.11 (2012) (directing courts to utilize the version of the Sentencing Guidelines in effect at the time of sentencing absent any ex post facto considerations).

be delved into, however, because offense level for Group Two, consisting only of the immigration law violation count (Count Five), is twenty-four. (*See* PSR ¶ 34.) Group Two's calculated offense level is not, and indeed cannot because it does not involve a crack cocaine charge, being challenged by Lopez in these proceedings. Hence, even if the adjusted offense level calculations for the group one cluster were to drop below twenty-four, it wouldn't impact Lopez's sentence. The Sentencing Guideline grouping rules key off the group with the highest offense level. If group one's offense level drops below twenty-four, group two's twenty-four level would become the lead offense level group.

The original sentencing calculations sum up as follows. The lead count for Group One was Count IV, the crack cocaine count, with a base offense level of twenty-six. (*See* PSR ¶ 35.) Group One is the lead group that drives the offense level. Sentencing Guideline grouping rules require two levels be added. (*See* PSR ¶¶ 37-38.) This leaves the base offense level at twenty-eight. There is no reduction for acceptance of responsibility. Lopez's criminal history category is IV. (*See id.* ¶ 48.) This yields a sentencing range of 110 to 137 months. This Court imposed a sentence of 124 months; and then added the seven year consecutive 924(c) sentence. (*See* CR 95 (final written judgment).)

Today this sentencing framework would be different, and the resulting adjusted base offense level being two levels lower, because the crack cocaine count, which drove the original sentencing matrix, would now be calculated four points lower. Cycling this through the Sentencing Guideline's grouping rules results in a final base offense level that is two levels lover; dropping from a twenty-eight to a twenty-six.

C. **The Impact of the Recent Sentencing Guideline Retroactive Crack Cocaine Amendments**

On November 1, 2007, the Sentencing Commission enacted Sentencing Guideline Amendment 706 which reduced the 2D1.1 base offense levels for crack cocaine. *See also* U.S. Sentencing Guideline Manual amend. 715 (effective May 1, 2008) (clarifying that Amendment 706 applied in polydrug cases and amending the § 2D1.1 drug equivalency tables accordingly). On December 7, 2007, the Sentencing Commission approved making Amendment 706 retroactive by listing it in United States Sentencing Guidelines § 1B1.10(c)'s list of retroactive amendments.

The adjustment to § 1B1.10(c), making Amendment 706 retroactive, went into effect on March 3, 2008.

Later, the Sentencing Commission enacted a second and further crack cocaine base offense level reduction in response to Congressional legislation. On August 3, 2010, the President signed the Fair Sentencing Act of 2010 ("FSA") into law. Pub. L. No. 111-220, 124 Stat. 2372 (2010). The FSA amended the threshold quantities of crack cocaine that trigger mandatory minimum sentences under federal law. The FSA does not contain a provision making the statutory changes retroactive. Hence statutory mandatory minimums are still applicable. *See United States v. Sykes*, 658 F.3d 1140, 1146-49 (9th Cir. 2011).

In the case at bar, the applicable mandatory minimum is five years and hence is not an obstacle to Lopez receiving a sentencing reduction. (*See* generally CR 95 (written judgment denoting the crack cocaine conviction is pursuant to 21 U.S.C. § 841(b)(1)(B) which carries a sentencing range of between five and forty years).)

In enacting the FSA, Congress directed the United States Sentencing Commission ("Sentencing Commission") to promulgate amendments implementing the Act. The Sentencing Commission responded and issued a temporary emergency guideline amendment effective November 1, 2010, also known as Amendment 750. *See* U.S. Sent. Comm'n, *Notice of a Temporary, emergency Amendment to Sentencing Guidelines and Commentary*, 75 Fed. Reg. 66, 188 (Oct. 27, 2010).

Amendment 750 increased the quantities of crack cocaine that trigger the increases in the graduated scheme base offense levels present in United States Sentencing Guideline Manual § 2D1.1. Those increased quantities now correspond to FSA's statutory thresholds.

The Sentencing Commission subsequently voted to reissue Amendment 750 as a permanent amendment, which became effective November, 1, 2011. *See* U.S. SENTENCING GUIDELINE MANUAL, Supp. to Appendix C, amend. 750. The Sentencing Commission further amended the policy statement in Guideline Manual § 1B1.10 to clarify the quantities and corresponding offense levels are retroactively applicable to prisoners whose sentences have become final.

///

Pursuant to the Sentencing Commission's retroactive sentencing amendments, on November 28, 2011, Lopez went before this Court to seeking a reduction in his sentence pursuant to both Amendments 706 and 750 to United States Sentencing Guideline Manual as they impact the crack cocaine Sentencing Guidelines. (*See* CR 123 (Lopez's original pro se resentencing motion).)

Although the issue is complex, Lopez is legally eligible for a reduction. Utilizing the 2012 version of the Sentencing Guidelines, the applicable base offense level for 13.5 grams of crack cocaine is now twenty. *See* U.S. Sentencing Guideline Manual § 2D1.1(c)(10) (2012) (applicable to offenses involving between 11.2 and 16.8 grams of crack cocaine). This lowers the base offense level for count of conviction Group One to twenty. This in turn will elevate sentencing Group Two (the illegal reentry count) with its offense level of twenty-four to the lead base offense level group.

Applying Sentencing Guideline grouping rule calculations found in the PSR, which are unchanged by the retroactive Sentencing Guideline amendments, two levels are added pursuant to § 3D1.4. (*Compare* PSR ¶ 39.) This yields a total offense level of twenty-six which is two levels lower than the original twenty-eight applied by the district court at Lopez's sentencing. No mitigating adjustment for acceptance of responsibility is applicable under § 3E1.1 as Lopez's convictions are derived from jury verdicts.

Post crack cocaine sentencing amendments, Lopez's final adjusted offense level, after all grouping and other adjustments apply, is twenty-six (26). This Court sentenced Lopez based on a total offense level calculation of twenty-eight (28).

The Presentence Report calculates Lopez's criminal history category to be IV. Given Lopez's new total offense level of twenty-six, the Sentencing Guideline Sentencing Table now dictates a revised final adjusted sentencing range of 92-115 months. This Court determined Lopez's original Sentencing Guideline range to be 110 to 137 months.

The drop in sentencing range is 110 to 137 months to 92 to 115 months.

At sentencing, this Court imposed a sentence of 124-months for the crack cocaine and immigration offense counts of conviction. For Counts One and Two, the court imposed concurrent sentences of 120 months given ten-years is the statutory maximum sentence for those offenses.

///

7

1    This Court's sentence of 124 months constitutes 51.85% of the entire sentencing range of 110-37 months. If this Court would to impose a comparable sentence within the new Guideline range, the best approximation would be 103 months which is 52.173% of the range. Lopez would argue a sentence of 102 months, 47.826%, would be a bit more fair and equitable.

In sum, the result of both relatively recent crack cocaine Sentencing Guideline amendments is that Lopez's sentence on Counts One, Two, Four, and Five can legally be reduced to 103 months for all four counts running concurrent. Then the Court would be obligated to impose the already extant eighty-four month consecutive sentence for the 18 U.S.C. § 924(c) conviction. In total, Lopez is entitled to a twenty-two month reduction in sentence.

The United States Court of Appeals for the Ninth Circuit order confirms this analysis. (*See* CR 137.) That order is the product of a government concession after examining Lopez's opening brief on appeal.

### D.    Lopez's Motion for Sentencing Reduction and the Court's Ruling

On November 28, 2011, prior to appointment of counsel, Lopez filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c), a filing precipitated by the Sentencing Commission's decision to designate its recent cocaine base amendments retroactive. (*See* CR 123.)

This Court denied the motion in two written orders; the second order precipitated by Lopez filing a request for a status check. (*See* CR 127, 130; *see also* CR 129 (letter to the court from Lopez).) The Federal Public Defender (FPD) has to take some responsibility for the district court's erroneous denial of Lopez's motion. After being appointed, the FPD informed the district court it did not intend proceed on Lopez's pro se motion because Lopez's "overall sentence will not be affected by any of the changes contemplated by 18 U.S.C. [§] 3582(c)." (CR 26.)

Upon further examination on appeal, both the Federal Public Defender, and to a limited extent the government which conceded error on appeal, determined it had given this Court erroneous legal advice. For this, the Office of the Federal Public Defender apologizes to the Court.

/ / /

/ / /

/ / /

8

This Court's first written order is predicated almost solely on the FPD's disinclination to proceed in the litigation. (*See* CR 127.) This Court relied on the belief that Count Five, the unlawful reentry count, carried a 124 month sentence indicated that Lopez could not receive a sentence below that amount. (*See* CR 130.)

Lopez filed a pro se notice of appeal that the Federal Public Defender joined after concluding the office's analysis at the trial level was in error. The Ninth Circuit agreed and sent the matter back to this Court.

### E.  This Court's Discretionary Resentencing Decision

The re-sentencing statute states, in pertinent part, that:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)…, the court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2) (2012).

Full reconsideration and alteration of the original sentence is not the purpose of a 18 U.S.C. § 3582(c)(2) proceeding. *See United States v. Fox*, 631 F.3d 1128, 1130-31 (9th Cir. 2011). The sole questions at issue in these proceeding is whether the district court has legal discretion to grant a sentencing reduction and whether the district court will exercise its discretion to afford Lopez a full or partial sentencing reduction.

By its plain terms, § 3582(c)(2) requires that the district court: 1) determine whether the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)"; 2) "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable"; and 3) determine whether "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (2012); *see United States v. Lightfoot*, 626 F.3d 1092, 1096 (9th Cir. 2010) (quoting and relating this text).

"There is simply no other requirement to be found in the plain text of the statute." *Lightfoot*, 626 F.3d at 1092 (citing *United States v. Chaney*, 581 F.3d 1123, 1126 (9th Cir. 2009)).

In the case at bar, the sentencing range at issue has been lowered based on the Sentencing Commission's amendments to the crack cocaine base offense level. Although the grouping aspects of the case render the issue a bit more complex, the crack cocaine offense level was the highest of all counts of conviction pre-Sentencing Guideline amendment. One could envision grouping circumstances where the recent amendments would not alter the final adjusted sentencing range. Under the facts and sentencing calculations at issue in the case at bar, the drop in the base offense levels for crack cocaine do change the sentencing range.

That sentencing range "has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." Under the terms and language of 18 U.S.C. § 3582(c), that triggers Lopez's legal entitlement to resentencing. Lopez's legal eligibility for a sentencing reduction has been affirmed by the United States Court of Appeals for the Ninth Circuit and is now law of the case. The remaining question is whether this Court should exercise its discretion to impose a full or partial amount of the allowed reduction; or to determine that no reduction is warranted at all.

There are two conditions, based on the statutory language of § 3582(c)(2), that must be met before a court can consider a defendant's motion for a reduction of sentence: 1) the sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission"; and 2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Leniear*, 574 F.3d 668, 673 (9th Cir. 2009) (quoting 18 U.S.C. § 3582(c)(2)). Lopez has demonstrated the satisfaction of the first step in that this Court based Lopez's sentence on a range that has now been retroactively lowered by the Sentencing Commission. The inquiry now shifts to the second step.

This Court's discretionary decision to impart a sentencing reduction is cabined by United States Sentencing Guidelines Manual § 1B1.10(b), "the applicable policy statement issued by the Sentencing Commission." *See United States v. Fox*, 631 F.3d 1128, 1131-32 (9th Cir. 2011); *see also United States v. Lightfoot*, 626 F.3d 1092, 1095 (9th Cir. 2010) ("[n]o doubt a decision pursuant to § 3582(c)(2) is a discretionary decision separate from the original sentencing").

/ / /

/ / /

1    The discretionary decision to further reduce the sentence is a district court function. In prior
2    proceedings, this Court erroneously believed it lacked the legal authority to reduce Lopez's sentence.
3    Therefore, it never undertook an analysis of the second, discretionary, step.

**F.    The Parties' Proposed Resolution**

After the Ninth Circuit issued its remand order (*see* CR 137), defense and government counsel, through the help of the Office of Probation, were able to review Lopez's BOP inmate skills progress report.[2] The report is not favorable to Lopez in at least some respects.

Lopez has had issues with violence, possessing illegal contraband, and general prison rules violations. The government, had it wished to press this issue, would have a valid case that this Court should decline Lopez's request for a sentencing reduction on the basis that Lopez's early release could conceivable put the public at risk.

The government, to its credit, also recognized some of the positive developments in Lopez's prison record. Lopez claims that his difficulties were largely the result of his continued association, involuntary at times, with gang members and the attendant rival gang animosities and conflicts this situation creates. Lopez, to get away from this influence, recently requested a BOP transfer to a new facility. BOP recently granted that request and moved Lopez to United States Prison Terre Haute, a facility located in Indiana. There Lopez has had fewer gang issues.

Lopez recognized his failings and, as part of the transfer, enrolled in intensive BOP life skills and education programs. In May of this year, Lopez had logged literally 1500 hours in BOP special management unit specialized study and modification classes.

The government recognizing Lopez's efforts to clean up and get his prison record in-line, and particularly in light of the 1000 hours plus Lopez has devoted to that endeavor recently, has decided to give Lopez a chance to prove these efforts will yield fruit.

The government has proposed that Lopez elect to not proceed with his current resentencing litigation. That this Court should dismiss his current motion without prejudice with the express

---

[2] Because the report is a protected executive branch document, counsel did not attach a copy of the Progress Report to this motion. It is anticipated that the Office of Probation will provide this Court with its copy upon this Court's request.

11

permission to refile within one year's time. Alternatively, this Court could stay current proceedings for a year and bring the parties back for a status check to revisit the issue of Lopez's prison performance.

If Lopez performs well in the ensuing year, the government will consider recommending a sentencing reduction.

Defense counsel has personally communicated the government's offer and otherwise discussed with Lopez the merits of that offer. Defense counsel is of the opinion that the government's offer is generous and that, had the litigation gone forward, there is a real risk this Court would have denied Lopez's resentencing motion on discretionary grounds. Defense counsel advised Lopez to take up the government's offer and to redouble his efforts to ensure complete prison rule compliance over the next year period.

Lopez has freely and voluntarily agreed to accept the government's offer with the full understanding that this resolution will delay receiving a sentencing reduction for at least a year.

### G.  Conclusion

Therefore, in order to preserve Lopez's right to seek a 3582(c) sentencing reduction, and to ensure he has the best chance of receiving that reduction, Lopez agrees with the government's proposal and hereby formally requests this Court stay this matter for one year to allow Lopez to prove to the Court he can comply with prison rules and therefore will not pose an untenable risk to the public if this Court reduces his sentence by the requested twenty-one months.

Alternatively, this Court could dismiss Lopez's current sentencing reduction motion with specific leave to refile in one-year's time.

Respectfully submitted,

*/s/ Jason F. Carr*

_____
JASON F. CARR,
Assistant Federal Public Defender

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

**DATED:  November 26, 2013**

12

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Law offices of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on November 25, 2013, she served an electronic copy of the above and foregoing **UNOPPOSED MOTION TO STAY FURTHER RE-SENTENCING PROCEEDINGS PURSUANT TO 18 U.S.C. § 3582(c)(2) TO ALLOW DEFENDANT TIME TO IMPROVE HIS CUSTODY RECORD** by electronic service (ECF) to the person named below:

DANIEL BOGDEN
United States Attorney
PETER LEAVITT
Assistant United States Attorney
333 Las Vegas Blvd. So., 5th Floor
Las Vegas, Nevada 89101

/s/ Maribel Bran
_____
Employee of the Federal Public Defender